May it please the Court, Norma Aguilar, Federal Defenders, on behalf of Mr. Gunderson, good morning. Good morning. Here, Mr. Gunderson raises two arguments. One is that the prosecutor's question asking Mr. Gunderson what he simply said violated his Fifth Amendment right to remain silent. He also argues that the district court erred by not giving a role reduction when it failed to compare Mr. Gunderson's role in the offense to the other both identified players by the material witnesses and the other likely players. Here, the government asked Mr. Gunderson what he simply said. And that was immediately after Mr. Gunderson indicated that that statement that was being talked about was when, quote, they were actually inside of the building. Let me make sure I got my sort of procedural thing straight. This was asked on cross. Correct. And there are different rules that apply to what can be used on cross. And was the statement, even if made inside the building, pre-Miranda? I don't think that that is clear that it was made pre-Miranda. Certainly the district court understood it. When was he Mirandized with respect to the time of the initial arrest? Some hours later, I think. Some time later. About five hours? I'm not exactly sure about the time, but certainly some time later. But certainly it was in that building that Mr. Gunderson identified. And the district court- Well, I'm trying to figure out, even if he were inside the building, which I think may be uncertain, that even if he were inside the building, I'm trying to figure out whether that was pre-Miranda. I rather suspect it was. And whose burden is it to show when Miranda took place with respect to that statement? Well, I think, Your Honor, that certainly would be the government's burden. Where here, in particular, there was a violation of Miranda. He was asked questions by Agent Sorantes after he was already in custody without the benefit of Miranda rights. And given the fact that Agent Sorantes had already violated his Miranda rights, I don't think that it's particularly clear here whether the statement was made pre- or post-Miranda, but certainly the district court understood it as being that Mr. Gunderson, I believe, indicated that in the record ER, the way the district court characterized it is he, in essence, is saying that didn't happen there, but was asked something later, and this something later is when he invoked. And so the district court understood this to be a statement that was made later on during the invocation, at least that's how the district court characterized it. Even if we assume that there's a Miranda violation, the government wasn't using this in its case-in-chief. That's correct, that the government wasn't using it in its case-in-chief. But Doyle doesn't only talk about the use of silence against the defendant during the case-in-chief. It talks about it in the context of cross-examination. And, for example, in Doyle itself, the defendant there testified, and he was questioned about the fact that he, actually I think it was, I'm sorry, actually I believe it's, he testified and he was asked about the fact that he didn't talk about, he didn't testify, that he didn't earlier talk about what he was testifying about in court. Well, the government's point, I guess, is it's a surprisingly incomplete statement that he made. Well, it is. I guess the government's argument is that this is proper impeachment. But here, the statement that Mr. Gunderson made doesn't impeach anything that he had previously said. And the fact that he was, he didn't say anything more doesn't impeach his surprise, the surprise that he had indicated at the knowledge that there were material witnesses. What about those two guys in the trunk? I don't know. Correct. That doesn't impeach. It's ineffective impeachment, maybe. Correct. And this court has characterized impeachment in Peruto, for example, where it indicates that the difference between the post-arrest statements and the trial testimony must be arguably inconsistent. And here there was nothing inconsistent about what Mr. Gunderson said. The government had proffered that this was demeanor evidence, that what they were trying to get at was what Mr. Gunderson, I guess, how he reacted non-verbally. But that's not the question that the government asked. The government specifically asked him about what he simply said. And this court has held in Velarde Gomez that that question about what someone says is not properly demeanor evidence. It does go to silence. I would also argue that with respect to the sentencing, here the district court didn't make any findings comparing Mr. Gunderson's role to any other identified player in the offense. What the district court held was that Mr. Gunderson simply didn't meet his burden. And this is different, for example, that in this district, in this case, this Court's decision in Rosales-Rodriguez, where the district court found that the defendant, that certainly in that case a role reduction might be warranted, but that the evidence also would suggest that he was acting alone, that he was financing, in that case, a drug venture. But here the district court couldn't make a similar finding because the material witnesses had already identified other people in the offense. And the district court simply failed to compare Mr. Gunderson's role against those other players who would obviously be more significant players in the commission of the larger importation offense. And with that, I'll. Roberts. Okay. Why don't we hear from the government, and then you'll have some time. Thank you. Hey, police, the court. George Hardy for the United States. Good morning. The defendant, the appellant, argues Doyle error as its first assignment of error. There was no Doyle error in this case. This Doyle has never been extended to reach post-arrest, pre-Miranda statements, or even silence, when offered by the government as impeachment evidence after the defendant has chosen to testify. What if we think this wasn't impeachment evidence because it was so totally ineffective? Well, that's an interesting point. I mean, it wasn't what was really argued in their briefs. The district court actually found that the testimony that was being impeached was his statement that he was surprised, and that the question was, and yet you merely said or you simply said, I don't know. I mean, that apparently is what the district court found as the basis for that it was impeachment testimony. It was certainly on cross-examination of the defendant. It was not offered in the government's case in chief. So Doyle is really not. Well, it's a surprising case where the defendant testifies as part of the government's case in chief. Well, it could have been offered by the agent's testimony, but it wasn't. I mean, we specifically agreed beforehand that. That would only come in. But it would come in if, in fact, he did testify, and he testified, so we went into it. And so there just isn't any Doyle error. And even if there were some snuggling up to the, implying that there was implication from silence, it was all stricken from the record, and the jury was admonished to disregard it twice. Yes, and then instructed very carefully afterwards. I mean, I can hardly think of a way better to draw to the jury's attention what was done to this and don't pay any attention to it. And please don't think of a camel in the next 20 seconds. Yeah, right. It's true, true, true enough. It is difficult to see, but it's also difficult to figure out what else the district court could have done, because the jury was going to be asking, what is it that you're telling me not to pay any attention to? So when they sent the note out later on, in fact, at counsel's suggestion, he didn't repeat those questions and answers and merely paraphrased it. So there's no Doyle error. There was appropriate impeachment, and that would be the end of that issue, I think. Mr. Hardy, do you know whether the record demonstrates when the Miranda warning was given? This inside the building comment that the defendant made changes the ballgame a little bit here, but I'm not sure when the Miranda warning was given. The record is not clear with respect to whether or not when the defendant said, I made that statement in the building later, whether or not that was pre- or post-Miranda. It's just not clear. I think circumstantially I would argue that it was not post-Miranda, because he was Mirandized by other agents four and a half to five hours after this event. He said that he first saw the aliens in the trunk when he was walking into the building, and it was around that time when it seems like he's claiming that he said that he didn't know who they were. I don't know. So the implication – I think the record is not specifically clear. I actually think the district court was concerned about that issue, and that's why the district court struck the testimony and admonished the jury, because there was the possibility, I guess, that we may be in a post-Miranda situation. But in answer to your question, I don't think the record is specifically clear. On the sentencing issue, the defendant had the burden to establish his right to a minor role adjustment. His position was that he had no role, not a minor role, and the district court judge, Judge Hayes, said, look, I can't just make up facts here. I can't just sort of speculate as to what the situation might be. So in the absence of any basis upon which to grant you the two-point reduction, I'm not going to do it. But there's a bit of a conundrum here if it's true that he didn't know. If his story is true, which the jury said it wasn't, but, I mean, juries, you know, they do the best they can with the information in front of them. The jury might be right. The jury might be wrong. We're compelled to assume with enough evidence whether they're right or wrong that they are right. But if his story is true, what can he tell you about the other participants in this? Nothing. From that perspective, I understand the conundrum, but I think the premise is wrong. I mean, the jury has decided what is truth here. So if he's now saying that there's a different truth. Well, he's always been saying there's a different truth. Well, and now he's been told by a fact-finder in our criminal justice system that you're lying. Right. Well, I think we have to be able to make the argument, look, you know, I'm innocent, but what they've convicted me of is driving two aliens in the trunk. But there's evidence here that somebody made the arrangements, not me, with them in Mexico for transportation, and they never even saw me. And if, in fact, I'm guilty, as the jury says, all I did was drive a car after they'd been put in the trunk. They never even saw me, according to their own testimony. Doesn't that make me minor? Well, I mean, I think that's the argument that the defense is making, that through the material witness testimony and through the circumstances and through the recognition that these offenses are generally conspiracies involving lots and lots of people, that you can assume or the judge should assume that the role of the driver in this transporting case was minor. The district court said he couldn't do that. There wasn't enough to base his decision to do that, given the record. It's a preponderance standard. Was the judge clearly erroneous in this decision? I don't think we can actually say that. We don't know if he was supposed to collect money at the end and carry it back and things like that. I mean, that maybe is the thinking. Exactly. You can start speculating about lots of facts on either side of that issue. So the district court did not clearly err in not giving the two points, also didn't clearly err in not giving the obstruction of justice on the upside of that, which would have been the concomitant penalty for lying on the stand. But the judge didn't do that. And ultimately we come up with a 57-month sentence, which was at the top end of the range that he would have gotten had he gotten the two-level reduction for a minor role. Given the known facts, which are relatively few here, would the district judge have been justified in giving a minor role reduction in this case, given the nature of the person's involvement? No, I think the record would support that. And the court would not be clearly erroneous in reaching that decision. But the court didn't. And I think Judge Hage was extremely thorough in this case in a lot of different respects, and this was one of them. So unless there are further questions, I'll be happy to submit. Okay. Thank you. Thank you. Response? Thank you. I would argue that here it's not the district court clearly found that there was certainly a possibility that this statement that was made by Mr. Gunderson was post-Miranda. Certainly when Mr. Gunderson indicated that it was something that happened later on, it was at a time when the jury would have expected that he would have given a complete story. Obviously he didn't. He invoked his right to remain silent. But I don't think that it's particularly significant exactly when it occurred because he did remain silent and he didn't testify about what he said or what he didn't say. And the government, for the first time, argued when they were cross-examining him, they brought up this fact that he had simply said something. And so they were the first to introduce at all what Mr. Gunderson said or didn't say. And under those circumstances, I don't think that it is the type of impeachment that the government is profiting. Assuming that we do have a Doyle violation here, what's the effect of the district judge having instructed the jury to ignore it? Well, in the ordinary case, there is a presumption that the jury followed the district court's instructions. But here the district court repeated it. The jury heard it for the first time. The district court repeated it again and then was placed in an even more difficult position of having to reference it again during the jury's deliberation. But where normally we can assume that the jury followed the court's instruction, I don't think that assumption can be made here because of what the jury asked. They specifically asked what it was that they weren't supposed to consider. And at least certainly that suggests that at least someone might have been confused during the course of the trial as to what he could or could not consider. But how does that suggest that they considered it? Well, it's certainly one interpretation because they – obviously we can only speculate what the jury was thinking. But someone must have said something or something must have happened that prompted that question. That question didn't just come out of nowhere. But should the district judge have done something else to make sure that they didn't consider it? What else could he have done? Well, one thing that the district judge could have done is specifically instruct them that they couldn't consider the fact that he didn't say anything as opposed to the questions and the answers. I had at the trial advised the court that I didn't believe that there was any instruction that could have cured the error at that point. But the judge could have instructed them specifically that they couldn't consider the fact that he hadn't said anything more rather than the questions and the answers. Okay.
judges: Tunheim, Canby, Fletcher W.